# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| WALLACE SUBER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10 C 2876 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| CITY OF CHICAGO, a municipal corporation | ) | |
| and JODY WEIS, individually and as | ) | |
| Superintendent of the Police Department | ) | |
| of the City of Chicago, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Wallace Suber seeks compensatory and punitive damages under 42 U.S.C. § 1983 against the City of Chicago and Jody Weis (individually and in his official capacity) for alleged violations of Suber's Fourth and Fourteenth Amendment rights.[1] Defendants have moved to dismiss [R. 16] the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion is granted.

## I.

At this stage of the litigation, we accept Plaintiff's allegations as true and draw reasonable inferences in Plaintiff's favor. On around May 11, 2008, Wallace Suber was walking in a group of pedestrians on a Chicago street when a Chicago police officer demanded that one of the group stop walking. R. 13, First Am. Compl. ¶¶ 7-8. Suber was not the individual ordered to stop by the officers. *Id.* ¶ 13. When the person

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

ordered to stop walking began to run, police officers shot him approximately four times. *Id.* ¶ 9. During the course of the shooting, the officers discharged their weapons in close proximity to Suber and in the direction of himself and others in the group. *Id.* ¶¶ 10-11. One of the shots traveled past Suber's ear, and his hearing was severely damaged from either the direct discharge of one of the officers' firearms, or the supersonic speed of the bullet. *Id.* ¶¶ 14-15. After the shooting, Chicago police officers harassed Suber repeatedly. *Id.* ¶ 16. "Specifically, Plaintiff was told that, 'you're going to get the same treatment that your friend did.'" *Id.* ¶ 17. Fearing for his life if he remained a resident of Chicago, Suber was forced to move to Minnesota. *Id.* ¶¶ 19-20.

Suber alleges that before, on, and after May 11, 2008, Defendants failed to properly train "their" Chicago police officers. *Id.* ¶¶ 22-23. Specifically, Suber contends that Defendants failed to train officers so that innocent bystanders would not be put in peril of great bodily harm and so that officers would not discharge their firearms in close proximity to, or directly at, innocent bystanders. *Id.* ¶¶ 22-23. Suber claims that Defendants were aware of the police officers' improper conduct during the May 11 shooting and their subsequent harassment and intimidation of Suber, and yet Defendants took no action. *Id.* ¶¶ 24-25. Thus, Suber claims, Defendants' acts amounted to an official policy or widespread custom or practice. *Id.* ¶ 26.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are

entitled to the assumption of truth are those that are *factual*, rather than mere *legal* conclusions. *Iqbal*, 129 S. Ct. at 1950.

### III.

### A.

As detailed below, Suber's complaint suffers from three defects requiring dismissal: first, as Defendants argue, the complaint inadequately alleges that there was a deprivation of a constitutional right at all. That inadequacy is fatal as to both the official capacity claim against the City[2] and the individual capacity claim as to Defendant Weis. Second, even if an underlying constitutional violation is sufficiently alleged, the complaint inadequately alleges a basis for municipal liability as to the official capacity claim. Finally, again even if a constitutional violation has been adequately alleged, the complaint's allegations are insufficient to state a claim of individual liability as to Defendant Weis.

### 1.

With regard to the first defect, § 1983 provides a private cause of action against a person, who, acting under color of state law, deprives an individual of any "rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (quoting 42 U.S.C. § 1983). But § 1983

---

[2]A suit against a public official in his official capacity is a suit against the government entity of which he is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985); *Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001). Thus, the suit against Weis in his official capacity as the former Superintendent of Police of the Chicago Police Department is in reality a suit against the City of Chicago. Since the City of Chicago is already a defendant, the official capacity allegations are redundant.

4

is *not* itself the basis for a constitutional or federal right – § 1983 simply provides the procedural vehicle (or, put another way, the cause of action) for bringing suit to remedy violations of a right independently premised on the Constitution or a federal law. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) ("As we have said many times, is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.") (quotations and citations omitted). Thus, job one in a § 1983 action is to identify the specific constitutional right allegedly infringed. *Id.* at 394.[3]

Here, the complaint inadequately alleges the violation of a specific constitutional right. The "Jurisdiction" section of the complaint does contend that jurisdiction is conferred by the Fourth and Fourteenth Amendment, and § 1983. R. 13 ¶ 1. Even setting aside that those constitutional and statutory provisions are not jurisdictional provisions, the complaint goes no further in alleging the constitutional right at issue. On the facts alleged in the complaint, the Fourth Amendment cannot be the source of the constitutional right: in *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989), the Supreme Court explained that a government officer effectuates a seizure, for Fourth Amendment purposes, only when the officer intentionally stops a person's freedom of

---

[3]To be sure, where qualified immunity is an issue, a court has the discretion to decide which of the two elements of qualified immunity should be addressed first, that is, whether the complaint alleges a deprivation of a constitutional right at all or whether the right at issue was clearly established at the time of the conduct. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818-20 (2009) (overruling mandated sequence of *Saucier v. Katz*, 553 U.S. 194 (2001)). Qualified immunity is not at issue here: municipalities are not entitled to qualified immunity, and Defendant Weis has not raised the argument.

movement "through means intentionally applied." Even though *Brower* itself involved a police-established roadblock, and the case thus did involve a Fourth Amendment seizure, the Supreme Court drove the point home in *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998), which held that no seizure, within the meaning of the Fourth Amendment, had occurred when an officer accidentally crashed his police car into a motorcycle that the officer was chasing. In the present case, the complaint does not allege that the police officers intentionally seized Suber, let alone intentionally caused the injury to Suber's hearing. The complaint does not state a Fourth Amendment claim.

That leaves the Fourteenth Amendment, which of course protects various rights on its face (and even more through incorporation), none of which Suber specifically identifies as the basis for a claim. Assuming that Suber relies on the substantive due process guarantee against conscience-shocking executive action, *Lewis*, 523 U.S. at 846-47, the complaint does not state a claim. "[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 849. The complaint here does not allege intentionally-inflicted harm, or even recklessly-inflicted harm. All the complaint alleges is that officers were attempting to stop a fleeing individual and one or more officers discharged their guns close to Suber, with no allegation of intentional or reckless action.

Suber's page-and-a-half, two-paragraph response to Defendants' motion to dismiss does nothing more to state the deprivation of a constitutional right. His response fails to address Defendants' substantive legal arguments that his complaint

should be dismissed with prejudice. *See Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995) ("when presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action") (citing *Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 545-46 (7th Cir. 1994)); *S.E.C. v. Black*, 2005 WL 1498893, at *4 n.3 (N.D. Ill. 2005) (to the extent defendants adequately raise deficiencies with the complaint, plaintiff must adequately respond with counter-arguments). Specifically, in response Plaintiff seems to rely only on the allegation that the verbal harassment plus physical injury states a constitutional claim. R. 19 at 1 ("the officer's statements . . . were accompanied by physical injury"). But he cites no authority for that proposition at all, let alone authority for the proposition that physical injury without an intent-to-harm or reckless state of mind can amount to a constitutional deprivation. Therefore, because the complaint fails to allege an underlying deprivation of a constitutional right, the complaint fails to state a claim against the City and Defendant Weis individually. Dismissal of the complaint could be premised on that ground alone.

**2.**

The second defect in Suber's complaint is the inadequate allegation of municipal liability, even if he has somehow adequately alleged an underlying deprivation of a constitutional right. Plaintiffs in a § 1983 suit against a municipality need not meet any heightened pleading standards, but must comply with conventional pleading standards. *Leatherman v. Tarrant Cnty. Narcotics Unit*, 507 U.S. 163, 165 (1993). "[A] local government may not be sued under §1983 for an injury inflicted solely by its

7

employees or agents. Instead, it is only when execution of a government's policy or custom . . . inflicts the injury that the government is responsible under §1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To state a claim for municipal liability under § 1983, a plaintiff must allege that "an official policy or custom not only caused the constitutional violation, but was 'the moving force' behind it." *Estate of Sims ex rel Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)); *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (a governmental unit is not liable under § 1983 unless the deprivation of constitutional rights is caused by its own policy or custom). Unconstitutional policies or customs can take three forms: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although unauthorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Phelan v. Cook Cnty.*, 463 F.3d 773, 789 (7th Cir. 2006). A municipality's failure to train may constitute an official custom or policy for purposes of liability under §1983 "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006) ("Establishing *Monell* liability based on evidence of inadequate training or

supervision requires proof of 'deliberate indifference' on the part of the local government.").

Here, Suber alleges that the City "failed to train their police officers properly such that they would discharge their firearms in close proximity to, or directly at, innocent bystanders," placing them in peril of great bodily harm. R. 13, First Am. Compl. ¶¶ 22-23. However, Suber has not made even the conclusory allegation – let alone facts entitled to the assumption of truth – that the purported inadequate training of Chicago police officers amounted to deliberate indifference to his constitutional rights. His complaint is devoid of any plausible allegations about how Defendants failed to train their police officers despite foreseeable consequences and/or repeated complaints of constitutional violations. *See Sornberger*, 434 F.3d at 1029-30. Nor does Suber's conclusory allegation that Defendants' "acts amounted to either an official policy or, in the alternative, a widespread custom or practice" state a claim upon which relief can be granted. R. 13 ¶ 26. Thus, Suber's pleading is insufficient to state a claim under § 1983 for failure to train. *See Hernandez v. Dart*, 635 F. Supp.2d 798, 813 (N.D. Ill. 2009); *Hutchens v. Harrison*, 2009 WL 1139121, at *6 (N.D. Ill. Apr. 28, 2009) (dismissal warranted when plaintiff fails to allege facts that plausibly suggest that defendants' failure to train was related to any sheriff policy or practice or a deliberate indifference that could support a *Monell* claim).

It's worth repeating that the Court does not apply a heightened pleading standard to § 1983 cases (or, for that matter, to any other claims that fall outside Rule 9(b) or statutes that required heightened pleading). But *Iqbal* and *Twombly* do

instruct that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task . . . ." *Iqbal*, 129 S. Ct. at 1950. For example, the Seventh Circuit drew a context-dependent distinction between a relatively straight-forward employment discrimination claim versus more complex claims:

> A plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else. That is an entirely plausible scenario, whether or not it describes what "really" went on in this plaintiff's case. A more complex case involving financial derivatives, or tax fraud that the parties tried hard to conceal, or antitrust violations, will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.

*Swanson v. Citibank*, 614 F.3d 400, 404-05 (7th Cir. 2010). In sharp contrast to the example of a straight-forward claim described in *Swanson*, Suber is trying to state a claim against a municipality for a failure to train, which requires the high-culpability standard of deliberate indifference to the deprivation of a constitutional right. On top of that, the underlying constitutional right asserted by Suber (as best as can be deciphered) is substantive due process, specifically, conscience-shocking executive action in the context of an injury inflicted on a bystander, yet another high-culpability standard to meet. Yet to support the failure to train claim, Plaintiff alleges no facts other than the single episode of the injury inflicted on him, and does not even allege that the City acted with "deliberate indifference." That is insufficient to state a claim of municipal liability in this context. *See Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009) (in analogous context of individual supervisory liability for failure to train, insufficient to merely allege or "parrot[]" the standard of deliberate indifference;

only factual allegation was one poorly-implemented search); *Ibanez v. Velasco*, 1997 WL 467286, at *3 (N.D. Ill. Aug. 13, 1997) (single incident usually insufficient for municipal liability); *S.J. v. Perspectives Charter Sch.*, 685 F. Supp.2d 847, 857-58 (N.D. Ill. 2010); *but see Johnson v. Chicago*, 2010 WL 4790905, at *1 (N.D. Ill. Nov. 18, 2010) (municipal liability sufficiently alleged, but distinguishable because the plaintiff alleged that "the officers who assaulted [Plaintiff] had a practice of abusing arrestees," and that "these practices were well known by command level and supervisory officials of the city both before and after his arrest"). Thus, the municipal liability claim fails for these independent reasons.

### 3.

Finally, Suber also seeks to hold the then-Chicago Police Superintendent, Jody Weis, individually liable for the alleged violation. Even assuming that Suber adequately alleged a constitutional deprivation, Weis argues that Suber "alleges no conduct at all on the part of Weis during the incident on May 11, 2008, or any conduct by Weis at any time that violated [his] constitutional rights." R. 16 at 3; *see Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) ("A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions."). Here, Suber alleges that Weis was "aware of the conduct displayed by [the] police officers, including the time of the shooting and during the period of harassment and intimidation following the shooting," yet he did not take any action. R. 13 ¶¶ 24-25. But Suber has not alleged any facts establishing that Weis was personally involved

with the May 11 shooting. The doctrine of *respondeat superior* cannot be used under § 1983 to create liability for supervisors due to the misconduct of subordinates. *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). Instead, Suber must demonstrate that Weis was personally responsible by "act[ing] or fail[ing] to act with a deliberate or reckless disregard of plaintiff's constitutional rights," or that "the conduct causing the constitutional deprivation occur[red] at [the defendant's] direction with [the defendant's] knowledge or consent." *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). As already discussed, Suber fails to state how Weis and the City of Chicago were deliberately indifferent in their alleged failure to train Chicago police officers. Likewise, Suber fails to allege facts establishing that Weis was personally involved in the deprivation of his rights, as opposed to being merely aware of the alleged harassment, which was comprised of the officer's statements made after the shooting. Thus, on this independent ground, Suber's claim against Weis in his individual capacity must also be dismissed.

## IV.

The dismissal of the First Amended Complaint shall be with prejudice for two reasons. First, after the original complaint was filed, Defendants moved to dismiss, and Plaintiff has already used his one-time right to amend as a matter of course, Fed. R. Civ. P. 15(a)(1)(B), in response to the first motion to dismiss. R. 6, 13. Second, Plaintiff's two-paragraph response to the motion to dismiss the First Amended Complaint does not even ask for leave to amend the complaint, let alone provide any reason to believe that a further amendment will improve the complaint. R. 19. The

absence of any discussion of a further amendment is particularly telling in light of the repeated references in the motion to dismiss that the dismissal be "with prejudice." R. 16 at 3, 4, 6. For the reasons discussed above, the Court grants Defendants' motion to dismiss with prejudice [R. 16].

ENTERED:

*Edmond E. Chang*
_____
Honorable Edmond E. Chang
United States District Judge

May 5, 2011